| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | )   4:23-cr- 43 |
| v. | ) |
| | )   Judge Atchley/Lee |
| | ) |
| DANA ADKINS; | ) |
| Also known as, "Dana Morris" | ) |

## Amended PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Dana Adkins ("the defendant" or "Adkins"), and the defendant's attorney, Mitchell Carter, have agreed upon the following:

1.     Defendant will waive indictment by the Grand Jury and plead guilty to a bill of information charging her with the following offense:

(a)    **Count One: Mail Fraud, 18 U.S.C. § 1341.**

The punishment for this offense is a term of imprisonment of not more than 30 years; a term of supervised release of not more than five years; a fine of not more than $1,000,000; a special assessment of $100; forfeiture, if applicable; and restitution to the victims of the offense as set forth below.

2.     There are no remaining counts to be dismissed.

3.     The defendant has read the Information, discussed the charges and possible defenses with defense counsel, and understands the crime charged.   The defendant is pleading guilty because the defendant is in fact guilty.

In order to be guilty, the defendant agrees that each of the following elements of the crime(s) must be proved beyond a reasonable doubt:

Page **1** of **12**

**Count One:    Mail Fraud, 18 U.S.C. § 1341:**

    (1) The defendant knowingly devised a scheme to defraud in order to obtain money or property or willfully participated in the scheme with knowledge of its fraudulent nature;

    (2) The defendant had the intent to defraud; and

    (3) That in advancing, furthering or carrying out the scheme, the defendant used the mails or a private commercial interstate carrier or caused the mails or private commercial interstate carrier to be used.

4.    In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which the defendant admits satisfy the offense elements.   These are the facts submitted for purposes of the defendant's guilty plea.   They do not necessarily constitute all of the facts in the case.   Other facts may be relevant to sentencing.   Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

The defendant, DANA ADKINS, was a resident of Stevenson, Alabama.

Facts relating to COVID-19: In December 2019, a novel coronavirus, SARS-CoV-2 (the "corona virus"), was first detected in Wuhan, Hubei Province of the People's Republic of China ("PRC"), causing outbreaks of the coronavirus disease COVID-19 that have since spread globally. On January 31, 2020, the Secretary of Health and Human Services ("HHS") declared a national public health emergency under 42 U.S.C. § 247d as a result of the spread of COVID-19 to and within the United States.   On March 11, 2020, the Director-General of the World Health Organization ("WHO") characterized COVID-19 as a pandemic.   On March 13, 2020, the President of the United States issued Proclamation 9994 declaring a national emergency beginning on March 1, 2020, as a result of the rapid spread of COVID-19 within the United States.

Unemployment Insurance System: The Social Security Act of 1935 initiated the unemployment insurance ("UI") system. UI payments were intended to provide temporary financial assistance to lawful workers who were unemployed through no fault of their own. Beginning in or around March 2020, in response to the COVID-19 pandemic, several federal programs expanded UI eligibility and increased UI benefits. The UI system is administered for the federal government by the state employment offices, and each state administrates a separate unemployment benefits program under guidelines established by federal law.

States such as Pennsylvania provide unemployment insurance to their citizens in a similar fashion. In the State of Pennsylvania, the agency responsible for program oversight is the Pennsylvania Department of Labor and Industry, (PADOL).

Federal Cares Act: On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security (CARES) Act was passed by Congress and signed into law by President Donald J. Trump. The CARES Act included an economic relief package in excess of $2 trillion designed to help the American people during the public health and economic crises related to the pending coronavirus ("COVID-19") pandemic. The CARES Act provides for three new types of unemployment benefits:

The Pandemic Unemployment Assistance ("PUA") program is a separate benefit program designed to cover many people who do not qualify for regular unemployment during the COVID-19 pandemic. This includes self-employed individuals, independent contractors, and part-time workers affected by COVID-19.

The Pandemic Emergency Unemployment Compensation ("PEUC") program is an extension of regular unemployment benefits that offers unemployment benefits up to thirteen (13) weeks beyond the number of weeks available from regular unemployment. The CARES Act made

these PEUC benefits available to the unemployed between March 29, 2020, and December 26, 2020.

The Federal Pandemic Unemployment Compensation ("FPUC") program provides an extra $600 per week in addition to regular or PUA unemployment payments between March 29, 2020 and July 25, 2020. The FPUC is available for everyone on regular unemployment or PUA, except those on training benefits.

In the State of Pennsylvania, the PADOL, based in Harrisburg, Pennsylvania, administered the UI program. Those seeking UI benefits submitted online applications. Applicants had to answer specific questions to establish eligibility to receive UI benefits, including their name, Social Security Number (SSN), and mailing address, among other things. Applicants also had to self-certify that they met a COVID-19-related reason for being unemployed, partially employed, or unable to work. The PADOL relied upon the information in the application to determine UI benefits eligibility. Once an application was approved, the PADOL typically distributed state and federal UI benefits electronically to a debit card, which claimants could use to withdraw funds and/or make purchases. These debit cards were sent via the U.S. Postal Service or by a private and commercial interstate carrier to the address the claimant provided. Claimants could activate their debit card via telephone or online.

Beginning in or about June 2020, and continuing until in or about January 2021, in the Eastern District of Tennessee and elsewhere, the defendant, DANA ADKINS, aided and abetted by others, devised and intended to devise a scheme and artifice to defraud, and willfully participated with knowledge of its fraudulent nature in the scheme to defraud the government of the United States, governments of various states, and others, and to obtain money and property by means of false and fraudulent pretenses, representations and promises. The scheme and artifice to defraud

and to obtain money so devised and intended to be devised by the defendant was in substance as follows:

Beginning in or about June 2020, the defendant, DANA ADKINS, coordinated with others who had knowledge about making false submissions to various states' UI programs and worked with them to create a system to make mass false UI claims to those states.

Between in or about July 2020, and January 2021, the defendant, DANA ADKINS, obtained the personal information of other individuals with which to make false UI claims in various states. The defendant obtained the permission of these individuals to file claims using their information.

Beginning in or about June 2020, the defendant, DANA ADKINS, aided and abetted by others, utilized a personal computer located in Alabama to submit false UI claims in various names to the state of Pennsylvania.

In or about July 2020, the defendant, DANA ADKINS, worked with others to assist with the submission of false claims and referred false claimants to one another. The defendant and R.A. worked together to submit false UI claims to the state of Pennsylvania.

Between in or about June 2020, and January 2021, the defendant, DANA ADKINS, utilized a personal cellphone and computer to submit false UI claims in various names to the state of Pennsylvania and caused the PADOL to mail debit cards to the Eastern District of Tennessee.

Between in or about June 2020 and January 2021 the defendant, DANA ADKINS, submitted false UI claims to various states and caused to be distributed approximately $150,804 in debit cards to parties who were not entitled to receive the claims.

Many of the above-referenced acts and events occurred in the Eastern District of Tennessee.

The defendant admits that she used and caused the use of the mail and private commercial interstate carriers in furtherance of the scheme to defraud described herein. Such mailings include,

Page **5** of **12**

but are not limited to, the mailing identified as Count One in the Information: i.e., a mailing of a debit card made by PADOL or about July 6, 2020 based on a fraudulent UI claim to the state of Pennsylvania in the amount of $4,149.00, using the name and personal information of KG, who the defendant knew was not eligible to receive UI benefits from Pennsylvania, delivered to KG at an address in the Eastern District of Tennessee. The defendant's violation occurred in relation to and involving a benefit authorized, transported, transmitted, transferred, disbursed, and paid in connection with a presidentially declared major disaster and emergency.

5.     The defendant understands that by pleading guilty the defendant is giving up several rights, including:

    (a)   the right to plead not guilty;

    (b)   the right to a speedy and public trial by jury;

    (c)   the right to assistance of counsel at trial;

    (d)   the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

    (e)   the right to confront and cross-examine witnesses against the defendant;

    (f)   the right to testify on one's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses;

    (g)   the right not to testify and to have that choice not used against the defendant; and

    (h)   the right to be indicted by a grand jury.

6.     The parties agree that the appropriate disposition of this case would be the following as to each count:

    (a)   The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

Page **6** of **12**

(b)     The Court will impose special assessment fees as required by law; and

(c)     The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case.   Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s).   The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence investigation report from the United States Probation Office and any information presented by the parties.   The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

7.     The defendant agrees to pay the special assessment in this case prior to sentencing.

8.     Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines.   Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines.   Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of any additional offense(s) prior to sentencing, the United States will be free to decline to make such motion, to withdraw that motion if already made, and to recommend to the Court that the defendant

not receive any reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

9. Unless otherwise limited by an agreed preliminary order of forfeiture, the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees that constitutes or is derived from, any proceeds obtained, directly or indirectly, as a result of the offense in violation of 18 U.S.C. § 1341. The properties to be forfeited include, but are not limited to, the following:

**MONEY JUDGMENT**

A money judgment in the amount of $150,804.00, in favor of the United States and against the defendant, DANA ADKINS, which represents the proceeds the defendant ~~personally~~ caused to be obtained as a result of an offense in violation of Title 18, United States Code, Section 1341.

The defendant further agrees to assist the United States fully in the identification, recovery, and return to the United States of any other assets or portions thereof subject to forfeiture. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to forfeit all interests in the properties as described above and to take whatever steps are necessary to pass clear title to the United States. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any civil or criminal forfeiture brought against these properties. The defendant agrees to take all such steps to locate such property and to pass title to the United States before the defendant's sentencing.

In the event a money judgment forfeiture is ordered, the Defendant agrees to send all money judgment payments to the United States Treasury. Defendant also agrees that the full money judgment amount shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody, the defendant agrees that the Bureau of Prisons will have the authority to establish payment schedules to ensure payment of the money judgment. The defendant further agrees to cooperate fully in efforts to collect on the money judgment by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of the money judgment without notifying defendant's counsel and outside the presence of the defendant's counsel.

10.     The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel. In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the

defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

(a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

(b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

(c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

11. The defendant acknowledges that the principal benefits to the United States of a plea agreement include the conservation of limited government resources and bringing a certain end to the case. Accordingly, in consideration of the concessions made by the United States in this agreement and as a further demonstration of the defendant's acceptance of responsibility for the offense(s) committed, the defendant voluntarily, knowingly, and intentionally agrees to the following: The defendant will not, whether directly or by a representative, request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. Section 552, or the Privacy Act of 1974, 5 U.S.C. Section 552a.

12. This agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or statutory speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

13. The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. If additional terms are included in the Supplement, they are hereby fully incorporated herein.

14. This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises,

FRANCIS M. HAMILTON III
UNITED STATES ATTORNEY

_8 JUN 23_
Date

By: _Steven S Neff_ (signature)

Steven S. Neff
Assistant United States Attorney

_5-15-23_
Date _6-8-23_

_Dana Adkins_ (signature)

Dana Adkins
Defendant

_5/15/23_
Date _6/8/23_

_W. F. (signature)_

Mitchell Carter
Attorney for the Defendant

3